UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Earl Willis Guyette, Jr.

    v.                                Civil No. 17-cv-486-LM
                                          Opinion No. 2019 DNH 037
Nancy A. Berryhill, Acting
Commissioner of Social Security

**O R D E R**

Earl Guyette seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the decision of the Acting Commissioner of the Social Security Administration, denying his application for supplemental security income under Title XVI. Guyette moves to reverse the Acting Commissioner's decision, and the Acting Commissioner moves to affirm. For the reasons discussed below, the decision of the Acting Commissioner is reversed, and the case is remanded to the Acting Commissioner for further proceedings.

**STANDARD OF REVIEW**

In reviewing the final decision of the Acting Commissioner in a social security case, the court "is limited to determining whether the [Administrative Law Judge] deployed the proper legal standards and found facts upon the proper quantum of evidence."

Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); accord Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001).  The court defers to the Administrative Law Judge's factual findings as long as they are supported by substantial evidence.  42 U.S.C. § 405(g); see also Fischer v. Colvin, 831 F.3d 31, 34 (1st Cir. 2016).  "Substantial-evidence review is more deferential than it might sound to the lay ear: though certainly 'more than a scintilla' of evidence is required to meet the benchmark, a preponderance of evidence is not.  Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018) (internal citation omitted).  "Rather, the court must uphold the Commissioner's findings if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support her conclusion."  Id.

In determining whether a claimant is disabled for purposes of social security benefits, the ALJ follows a five-step sequential analysis.  20 C.F.R. § 416.920.  The claimant bears the burden through the first four steps of proving that his impairments preclude him from working.  Purdy, 887 F.3d at 9.  At the fifth step, the Acting Commissioner has the burden of showing that jobs exist which the claimant can do.  Heggarty v. Sullivan, 947 F.2d 990, 995 (1st Cir. 1991).

**BACKGROUND**

A detailed statement of the facts can be found in the parties' Joint Statement of Material Facts (doc. no. 13). The court provides a brief summary of the case here.

Guyette applied for supplemental security income on March 6, 2015, alleging a disability onset date of September 29, 2014, when he was 33 years old. He alleged a disability due to depression, anxiety, attention deficit disorder ("ADD"), hyperactivity disorder ("HD"), and post-traumatic stress disorder ("PTSD"). At the time of his alleged disability onset date, he had obtained his GED, and had worked as a mechanic, a roofer, an HVAC installer, a painter, a factory worker, a nursing home worker, and a laundromat worker.

I.  Medical Evidence

The medical evidence in the administrative record appears to start with Guyette's emergency treatment and subsequent admission at Elliot Hospital on November 22, 2004, because of an overdose. The report notes that Guyette's infant son had died a month before of SIDS. He was diagnosed at that time with an adjustment disorder, substance abuse, and a history of ADD. Guyette was treated at Concord Hospital in June 2006 following another suicide attempt.

The parties' summary of the medical evidence begins with Guyette's appointment with his primary care physician, Dr. Rory Richardson, on September 29, 2014. Guyette was seen because of "worsening mood." He reported that he had been fired from his job because of his poor attitude. He reported having trouble sleeping. He was crying and emotional during the interview. Dr. Richardson noted depression and added medication. He also recommended counseling. Dr. Richardson continued to see Guyette during the relevant period.

Ann Pike, Ph.D., did a consultative examination in January 2015. She found that Guyette had hyper motor activity, no evidence of a thought disorder, rational speech, and good eye contact although he was tearful. She also found that he was depressed with flashbacks and intrusive memories, was properly oriented, had average intelligence, and impaired memory.

On July 6, 2015, JoAnne Coyle, Ph.D., a state agency psychologist, found that Guyette could understand and remember simple instructions, could sustain attention and concentration for simple tasks, and maintain effort for two-hour periods in a work day with some degree of self-pacing. He could have infrequent and brief interaction with the public, participate in typical interactions with co-workers and supervisors while doing simple nonsocial tasks, and adapt to minor changes in routine.

From July 2015 to July 2016, Guyette received counseling at The Mental Health Center of Greater Manchester with Laima Niemi, M.Ed., and Amanda Hapenny, ARPN. The records show that Guyette was oriented, but his mood was anxious and depressed, and his affect was restricted. He was late and missed appointments and forgot to bring or complete his assignments for his appointments.

Guyette also continued regular appointments with Dr. Richardson. Guyette stopped his medications, continued to smoke marijuana, and became more anxious. Dr. Richardson encouraged Guyette to continue with counseling and to see a psychiatrist. Dr. Richardson completed a Medical Source Statement of Ability to Do Work-Related Activities on August 15, 2016. He found that Guyette had persistent depression despite treatment and had marked limitations in his ability to do work-related activities such as make judgments, carry out complex instructions, and respond appropriately.

II. Procedural History

A hearing before an ALJ was held on September 1, 2016. Guyette testified about his depression stemming from his son's death and his limitations caused by PTSD, ADD, and HD. A

vocational expert testified about representative jobs in response to the ALJ's residual functional capacity assessment.

The ALJ issued his decision on November 14, 2016, finding that Guyette was not disabled. In support, the ALJ found that Guyette retained the functional capacity to do work at all exertional levels but was limited to simple and unskilled work, maintaining attention and concentration for two-hour periods through a work day with some self-pacing, infrequent interaction with the public, and not requiring tandem tasks with co-workers and supervisors. Based on that assessment and the vocational expert's testimony, the ALJ found at Step Five that there were jobs Guyette could do. The Appeals Council denied review, making the ALJ's decision the Acting Commissioner's final decision. This action followed.

**DISCUSSION**

Guyette moves to reverse the Acting Commissioner's decision on the grounds that the ALJ erred in giving great weight to Dr. Coyle's opinion and in failing to give adequate reasons for rejecting Dr. Richardson's opinion. The Acting Commissioner moves to affirm, arguing that no error occurred. Because the ALJ erred in his assessment of Dr. Coyle's opinion, the matter must be reversed and remanded for further proceedings.

6

When a state agency consultant provides an opinion based on a "significantly incomplete record," that opinion cannot be accorded "significant weight" or provide substantial evidence to support a residual functional capacity assessment. Alcantara v. Astrue, 257 F. App'x 19, 21 (1st Cir. 2007); Scott v. Berryhill, No. 18-cv-26-JD, 2018 WL 4328873, at *2 (D.N.H. Sept. 11, 2018). The record reviewed by a state agency consultant is significantly incomplete if the evidence added after the consultant's review materially changed the record. Alcantara, 257 F. App'x at 334. "The record remains materially unchanged where the new evidence either reveals no greater limitations or is arguably consistent with the consultant's assessment." Giandomenico v. U.S. Soc. Sec. Admin., 16-cv-506-PB, 2017 WL 5484657, at *4 (D.N.H. Nov. 15, 2017).

"The ALJ bears the burden of determining and explaining whether missing evidence is material to assessing the claimant's limitations."[1] Avery v. Acting Comm'r, Soc. Sec. Admin., 17-cv-443-JD, 2018 WL 2376507, at *4 (D.N.H. May 24, 2018); see also Alcantara, 257 F. App'x at 334; Laberge v. Berryhill, 18-cv-257-JL, 2018 DNH 260, 2018 WL 6819328, at *8 (D.N.H. Dec. 28, 2018). It is insufficient for the ALJ to simply state that the record

---

[1] The Acting Commissioner mistakenly put the burden on Guyette to show that the later evidence demonstrated greater limitations in his functional capacity.

7

was not materially changed. Alcantara, 257 F. App'x at 334. Instead, the ALJ must make the absence of change adequately clear. Giandomenico, 2017 WL 5484657, at *4.

In this case, the ALJ wrote: "Evidence submitted after Dr. Coyle gave her opinion does not warrant a change in the weight afforded to her opinion, as the record, as a whole, as well as the claimant's mental status exams and activities of daily living supports [sic] her opinion." Doc. 6-2, at 32. As examples, the ALJ stated that Guyette had demonstrated the ability to keep appointments, to shop, and to care for his girlfriend's child. The ALJ, however, did not address the <u>medical</u> evidence in the record that post-dated Dr. Coyle's opinion or explain why that evidence did not show a material change in Guyette's limitations.

For example, the ALJ did not address the records from The Mental Health Center of Greater Manchester where Guyette received counseling for a year after Dr. Coyle provided her opinion. While the session notes indicate that Guyette was oriented and had other normal indicia, they also indicate that his mood was anxious and depressed and his affect was restricted. He also reported increased episodes of anxiety. Importantly, compared to the ALJ's statement, the counseling records show that Guyette was late to multiple appointments,

8

missed one appointment, and forgot to bring or complete his assignments at times. At one session, Guyette stated that he was continually missing appointments despite his efforts to write them down.[2] Those circumstances undermine one of the grounds the ALJ cited to show that there was no material change in the record after Dr. Coyle's opinion.

Although the failure to address these records is a sufficient basis for remand, the court notes that even when the ALJ addressed opinion evidence that post-dated Dr. Coyle's opinion, he failed to adequately explain why that evidence did not show a material change in Guyette's limitations. In August 2016, approximately one year after Dr. Coyle issued her opinion, Dr. Richardson found that Guyette had marked limitations in work-related functions. His treatment notes also document continuing and additional issues and that Dr. Richardson encouraged Guyette to seek psychiatric treatment. The ALJ discounted Dr. Richardson's opinion in part because Dr. Richardson was not a psychiatrist and because he found the opinion was inconsistent with Dr. Coyle's opinion. But Dr. Coyle also is not a psychiatrist, and the fact that Dr. Richardson's opinion contradicts Dr. Coyle's opinion is not an

---

[2] In addition, the ALJ noted in the decision that Guyette was inconsistent in attending AA/NA meetings.

adequate explanation for why the record remained materially unchanged. If anything, that inconsistency demonstrates the opposite.

In summary, the ALJ either ignored or failed to adequately address medical evidence that was favorable to Guyette's claim and which post-dated Dr. Coyle's opinion. Thus, the ALJ failed to carry his burden to determine and explain whether that evidence materially changed the record on which Dr. Coyle's opinion is based. See Avery, 2018 WL 2376507, at *4. As a result, the ALJ could not rely on Dr. Coyle's opinion, as he did, to provide substantial evidence in support of the residual functional capacity assessment. In this way, the ALJ's decision lacks a properly-supported residual functional capacity assessment. Such an assessment is necessary to determine whether Guyette was disabled. Thus, the decision must be reversed.

## CONCLUSION

For the foregoing reasons, Guyette's motion to reverse (doc. no. 10) is granted, and the Acting Commissioner's motion to affirm (doc. no. 11) is denied.

The case is remanded pursuant to Sentence Four of § 405(g) for further proceedings. The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED

_____
Landya McCafferty
United States District Judge

March 14, 2019

cc: Counsel of Record

11